IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LATRINA WILLIAMS, | ) |
|     Plaintiff, | ) |
| v. | ) CASE NO. 2:20-CV-277-KFP |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Latrina Williams, seeks judicial review of the Social Security Administration's decision denying her application for disability insurance benefits. The undersigned, having reviewed and considered the record, briefs, applicable regulations, and caselaw, finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.   STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   FACTUAL BACKGROUND

Plaintiff was 47 years old when the Administrative Law Judge ("ALJ") rendered a decision finding Plaintiff not disabled. R. 26, 34. Plaintiff previously worked as a certified nurse aide for more than 15 years until April 15, 2017, when she alleges her disability began, due to an adults stills disease, lupus, and high blood pressure. R. 36, 57, 155, 163.

On July 28, 2017, Plaintiff's application for disability insurance benefits was denied (R. 75-79), and Plaintiff requested a hearing before an ALJ (R. 81-83). The ALJ held a hearing on October 3, 2018, and issued a decision on March 13, 2019, finding Plaintiff not disabled. R. 14-29, 30-61. Plaintiff sought review. The Appeals Council thereafter denied Plaintiff's request for review on November 22, 2019, making the Commissioner's final decision ripe for judicial review. R. 1-3; *see* R. 1-8; 42 U.S.C. § 405(g).

## III.   THE ALJ'S DECISION

Applying the necessary five-step sequential evaluation process, at step four the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:

> requires a sit/stand option with the ability to alternate sitting with standing and/or walking in 30-minute increments throughout the workday while remaining on task. The claimant can engage in occasional pushing/pulling

with the bilateral lower extremities and occasional pushing/pulling with the right upper extremity. She can engage in frequent handling and fingering with the right upper extremity. The claimant is limited to no more than occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She can engage in frequent balancing but never engage in climbing of ladders and scaffolds. The claimant can tolerate occasional exposure to extreme cold, direct sunlight and operating a motor vehicle for commercial purposes. She can have no exposure to unprotected heights or hazardous, moving mechanical parts.

R. 20. Based upon this RFC and testimony of the vocational expert, the ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy. R. 25. Thus, Plaintiff was not disabled. R. 26.

## IV.  DISCUSSION

Plaintiff argues the ALJ violated Social Security Ruling 16-3p in considering her subjective pain complaints, and she argues the ALJ failed to consider the combination of her impairments. However, on this record, the Court finds the ALJ properly considered that evidence and applied the applicable standard. The ALJ's decision is supported by substantial evidence.

### A. The ALJ Properly Applied a Subjective Pain Analysis

When a claimant attempts to prove disability based on her subjective pain complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p; *see, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant

establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on claimant's ability to work. 20 C.F.R. §§ 404.1529(c)-(d), 416.929(c)-(d); *see, e.g., Lopez v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-986, 2020 WL 6203876, at *6 (N.D. Ala. Oct. 22, 2020); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain, the ALJ must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Subjective complaint credibility is the province of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703–04 (11th Cir. 2018); Social Security Ruling 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016), 81 FR 14166-01. Adjudicators, as the regulations dictate (i.e., 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id*. The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received.

Under this framework, the ALJ concluded that Plaintiff had severe impairments, in combination, of connective tissue disease versus anti-inflammatory disease, hypertension,

and morbid obesity. R. 20-24. In her hearing testimony, Plaintiff complained of disabling pain. R. 42-52. The ALJ found that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ., the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 21. In reaching this conclusion, the ALJ considered, inter alia, Plaintiff's activities of daily living, medication and treatment history, and the opinion evidence. The ALJ's decision states, "Pursuant to Social Security Regulations and Social Security Ruling 16-3p and in accordance with § 404.1529(c)(4) . . . medical signs and laboratory findings do substantiate the claimant's physical impairment and is supportive that this impairment is capable of producing the alleged pain. However, . . . claimant's subjective pain complaints are not fully consistent with the evidence and the record supports this inconsistency of subjective complains versus objective findings on examination." R. 24.

This is the proper pain standard, and it is not improperly applied if supported by substantial evidence. *See Foote*, 67 F.3d at 1560-61; *Danan v. Colvin*, No. 8:12-CV-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013). When the ALJ applies the pain standard, as the ALJ did here, the next consideration appropriately factors in the credibility of Plaintiff's pain complaints. *See Foote*, 67 F.3d at 1560-61; *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain [under the standard], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). As discussed below, the Court cannot conclude that the

ALJ erred in finding the objective medical evidence fails to provide support for Plaintiff's subjective allegations of disabling pain. There is substantial evidence to support the determination that the medical findings do not support the existence of limitations greater than those reported in the RFC. Thus, the ALJ's decision that Plaintiff is not disabled based upon the availability of work within those limitations cannot be disturbed.

As to her connective tissue or inflammatory disease, the ALJ reviewed Plaintiff's medical care and noted the periodic musculoskeletal issues she experienced, such as leg pain, ankle and feet pain, swelling, stiffness, and rash to her arms and legs. R. 22-23; 397-401; 425. On April 27, 2017, Plaintiff was referred to rheumatologist Dr. James T. Jakes after reporting to Mulberry Medical Associates for primary care post-hospitalization for shortness of breath.[2] R. 422-26. She was observed at Mulberry with a slow, limping, steady gait and reported with constant leg pain that was aggravated when walking. R. 22; 422-25. She also reported having to use her right arm to move her left arm, and the record notes some swelling and joint stiffness in her left arm at that time. *Id.* Plaintiff also had some swelling in her left leg and trace edema in her left foot. *Id.*

Plaintiff followed up with the referral to Dr. Jakes in early May 2017, and she adhered to a medication regimen Dr. Jakes prescribed. While under Dr. Jakes's care, she experienced rash, tenderness, and swelling, but her rash improved and her strength, despite stiffness and pain, was not compromised. R. 22; 400-01. She saw Dr. Jakes again on May

---

[2] Plaintiff was admitted to Baptist Medical Center South on April 19, 2017 for shortness of breath just days after she was discharged on April 16 after an overnight admission for "generalized weakness and body aches." R. 222. The April 19 examination record notes no pain in the musculoskeletal examination and no rash. R. 211-12. Plaintiff was discharged April 22, 2017. R. 252.

31, 2017, at which time she was experiencing stiffness and pain in her ankles and feet and a rash on her hands. He ordered additional medication and ANA testing, which was positive for antinuclear antibodies. As the ALJ found, the records show this was the end of Plaintiff's treatment with Dr. Jakes, as she lost insurance. R. 396-401. Plaintiff did later seek care with a primary care treatment provider in June 2017, and she was still on the medication Dr. Jakes prescribed. R. 22-23; 429-30. While she reported then that she had pain "at times," her examination revealed full range of motion of extremities, but it also revealed trace edema to the bilateral lower extremities. R. 23; 430. Her rash had healed. *Id*. Her medication regime was continued. R. 431-31.

    The ALJ noted that Plaintiff was next seen as a "self-pay" patient at River Region Adult Medicine when she no longer carried insurance. R. 434. At that time, in September 2017, she denied pain and her examination revealed normal movement of all extremities and ambulation with normal gait and station. R. 23; 435. She did exhibit diminished reflexes, but her sensation was grossly intact. *Id*. She was seen in October for follow-up and reported no pain. R.435-40. She was seen again once in November 2017 for medication refills and once in January 2018, and was in no acute distress. R. 441-52. As the ALJ noted, the records show she tolerated her medications without adverse side effects.[3] *Id*.

    It was not until July 2018, over a year after the alleged disability onset, that Plaintiff next had a medical examination of record related to the issues she presents for her claimed

---

[3] In this appeal, Plaintiff also alleges medication side effects, but the record does not support that claim. As the ALJ noted, the treatment records indicate she tolerated her medications well without adverse side effects. R. 23, 442, 446, 450-51.

disability status. At that time, she was seen on charity care by the Kirklin Clinic at the University of Alabama. R. 490-95; 503-10. As the ALJ pointed out, that examination found mild swelling in the proximal interphalangeal joints (PIP) but no tenderness. R. 23, 506-07. The remainder of the musculoskeletal examination was unremarkable and showed no swelling or tenderness. R. 23, 506-07. For example, x-rays of the hands and feet revealed no significant erosive changes and normal bone mineralization, and laboratory results revealed that a blood test for inflammation (CRP) was high. R. 23, 503-04, 481. Additionally, Plaintiff's white cell count was high, possibly indicative of infection or recent use of Prednisone. R. 23, 481. Thereafter, Plaintiff began Rasuvo injections sometime in September 2018 and, when she was seen on October 5, 2018, she had only mild swelling in the PIP joints and no other tenderness or swelling of joints. R. 23, 513.

Additionally, the ALJ noted, per the records, Plaintiff's hypertension and echocardiogram were within normal limits. R. 21, 235, 249. In fact, medical records show Plaintiff later stopped taking her blood pressure medication because, according to Plaintiff, her blood pressure normalized. R. 22-23, 429-30.

In conducting her analysis and reaching her conclusion, the ALJ also relied in part on the July 14, 2017 state agency doctor's opinion from Dr. Julene Pearson, which found that Plaintiff could still perform light work. R. 24. Dr. Pearson opined that Plaintiff's statements concerning her symptoms, considering the medical and nonmedical evidence, were only partially consistent with the overall evidence R. 69. Dr. Pearson's review was thorough. In forming her opinion, she considered a variety of evidence, including the field office's face-to-face interview with Plaintiff; Plaintiff's reported daily activities; lab

results; Plaintiff's treatment course; relevant clinical notes; and normal diagnostic test results from x-rays, CT scans, ultrasounds, and echocardiograms. R. 66-68. The ALJ found Dr. Pearson's opinion was consistent with the evidence as a whole. R. 24.

Based on this medical evidence and Plaintiff's hearing testimony, the ALJ found Plaintiff's claimed intensity and persistence of symptoms was unsupported. The above reasons support, by substantial evidence, the ALJ's conclusion. As the above demonstrates and as the ALJ found, Plaintiff, while experiencing some pain in movement and some other limitations—such as lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, using her hands, driving, and shopping—remained able to perform limited daily functions like personal and grooming needs, laundry once per week, and attending regular doctor's appointments without assistive ambulation medical equipment. R. 21, 173-76. The ALJ appropriately limited the RFC to light work only with limitations on sitting, standing, pushing, pulling, handling, fingering, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, balancing, climbing of ladders and scaffolds, and exposure to certain environmental factors, including commercial driving. R. 20.[4]

In light of Plaintiff's treatment course, the diminutive severity of symptoms over that treatment course based on the medical records, and the inconsistency between Plaintiff's contentions about the type of limitations and symptoms she had when compared to the medical findings and treatment stability and medication, the ALJ concluded that her

---

[4] In establishing this RFC, the ALJ additionally made an administrative finding that Plaintiff's height of 62 inches and weight of 220 pounds yielded a BMI of 40.2, classifying her as extremely obese. R. 23, 475, 512; *see also* SSR 02-01p. The ALJ noted that condition may adversely impact her cardiovascular system and her ability to sustain activity. The ALJ did not find that Plaintiff's obesity otherwise reduced her RFC beyond the light work proscribed, and there is no record evidence that this was in error.

subjective pain complaints concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence.[5] R. 21. The ALJ articulated specific reasons, supported by substantial evidence, to support her discrediting of Plaintiff's disabling complaints of pain.[6] *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."); *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("[T]he ALJ specifically articulated at least three reasons for rejecting [plaintiff's] subjective complaints of pain," properly discrediting them). Thus, on this record, the ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence.

## B. The ALJ Properly Considered the Combination of Impairments

Plaintiff further argues the ALJ failed to consider the fatigue she testified about as a symptom of her obesity. *See* R. 50, 55. Plaintiff testified at the hearing that she experienced daily fatigue, and she reported fatigue to Dr. Jakes. R. 397-98. The regulations

---

[5] Plaintiff's credibility is further impugned in the record. Although not mentioned by the ALJ, there is an inconsistency between Plaintiff's alleged onset date and her work record. While Plaintiff recites April 15, 2017 as the alleged date of onset (R. 74), and she testified she has not worked since that date (R. 36), medical records belie that contention. *See* R. 425 (April 27, 2017 medical records in which Plaintiff reported for shortness of breath to Baptist Medical Center South; "Pt also reports she doe[s] not know just how she feels, she just feels like she cannot make it. **She went to work today** and was unable to stay.").

[6] The ALJ also noted that the medical record lacked any physician-imposed restrictions, which she would have expected if Plaintiff's subjective complaints were credited. However, no inference should be drawn from the silence on that subject in the medical record. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Clyburn v. Comm'r, Soc. Sec.*, No. 13-12214, 2014 WL 48629 (11th Cir. Feb. 7, 2014). Despite this errant comment, the ALJ did not base her decision merely on that silence. The ALJ based her discrediting of Plaintiff's subjective complaints on substantial evidence articulated in the decision, including Plaintiff's denials of pain at times, acknowledgments of improvement at times, and symptom reduction with medication, as noted in the text.

note that fatigue stemming from obesity may affect an individual's ability to sustain work. SSR 02-1P. However, other than arguing that Dr. Jakes recommended that she lose weight, Plaintiff points to no evidence to suggest a connection between the obesity of which the ALJ made an administrative finding and her proclaimed disabling fatigue. Plaintiff's argument that the ALJ erred in failing to consider fatigue from obesity is based on conjecture alone.

The ALJ's decision, however, is based upon substantial evidence and will not be overturned. The medical records show no reports of fatigue after May 2017. The ALJ did, as required, evaluate Plaintiff's obesity and any adverse impact on her ability to sustain work. Instead of finding that she suffered from considerable fatigue as Plaintiff argues, the ALJ, based upon the medical records, found that her obesity could adversely impact other functions, including her cardiovascular health (and her respiratory system), by limiting her ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week (or equivalent schedule). R. 23-24; *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of all of the claimant's impairments—including those that are not severe—in determining the claimant's RFC). In doing so, the ALJ limited Plaintiff to light work. That decision was consistent with the requirements imposed by Social Security Ruling 02-1p: "An assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. [O]ur RFC assessments must consider an individual's

maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity."). There is no basis for remand on this issue.

### C. Plaintiff's Work History Was Not a Determinative Factor

Finally, Plaintiff argues that the ALJ was required to consider Plaintiff's strong work history as part of her analysis, and she failed to do so. When evaluating the intensity and persistence of a claimant's symptoms, the Social Security Regulations do provide that "all of the available evidence from your medical sources and nonmedical sources" will be considered, "including information about your prior work record." However, a claimant's work history is only one factor to consider when evaluating the alleged symptoms. *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (rejecting claimant's argument that the ALJ should have accepted her testimony about her pain due to her good work history); *Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *7 (N.D. Ala. Mar. 20, 2019) (holding that "the record does not support a finding that the ALJ erred in determining Dudley's credibility without reference to prior work ethic"); *Binder v. Comm'r of Soc. Sec.*, No. 3:17-CV-1024-J-PDB, 2019 WL 1397923, at *10 (M.D. Fla. Mar. 28, 2019) (explaining that the ALJ "could have but did not have to weigh [claimant's] work history favorably to her").

In any event, Plaintiff's work history was not ignored, even if it was not given the prominence Plaintiff believes it deserved in the ALJ's analysis. The hearing testimony makes clear that the ALJ was aware of Plaintiff's work history, as the ALJ noted that

Plaintiff had spent significant time working during the prior 15 years as a certified nurse assistant. R. 36. Although the ALJ did not explicitly discuss Plaintiff's "strong work history" in her decision, failure to do so is not reversible error because the ALJ provided sufficient reasons and cited specific evidence to support the finding. Namely, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her impairments were not "entirely supported by the medical evidence and other evidence in the record" as explained above. It may be preferable that an ALJ's decision clearly recite acceptance or rejection of each matter and do so in succinct order and with perfect clarity, but a "failure to expressly list or refer to each issue does not mean that the judge did not consider them." *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 664 (E.D. Tex. 2006); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" (quoting *Foote*, 67 F.3d at 1561)); *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that [she] felt supported [her] decision does not mean that [she] failed to consider all of the other evidence in the record."). Thus, the Court's analysis focuses on "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Dyer*, 395 F.3d at 1211. Here, it is.

On this record, the ALJ's consideration of Plaintiff's subjective complaints of pain and combination of impairments is supported by substantial evidence. To the extent

Plaintiff asks this Court to re-weigh the evidence or substitute its opinion for that of the ALJ, the Court cannot do so. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence—as they are here—the Commissioner's decision must be affirmed even if this Court would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, on this record, the ALJ did not err.

## V.     CONCLUSION

For the reasons discussed above, the ALJ's decision properly considered the combined effects of Plaintiff's impairments and the entirety of the evidence. Nothing in the record shows that the ALJ's analysis of Plaintiff's subjective pain is unsupported by substantial evidence. Accordingly, it is ORDERED that:

(1)     The Commissioner's decision is AFFIRMED.

(2)     A final judgment will be entered separately.

DONE this 10th day of March, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE